UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

 

**Hon. Hugh B. Scott**

v.

10CR32A

**Order**

WALLY REYNOLDS,

Defendant.

*Pending Motions and Procedural Background*

Before the Court are various motions by defendant seeking discovery and other relief.

First, under the original version of the Indictment (see Docket No. 1), defendant filed his two

omnibus motions for various discovery relief, filing of a Bill of Particulars (Docket No. 18; see

Docket No. 26 (second motion)), and suppression of evidence and statements (Docket No. 26).

In particular, defendant sought the filing of a Bill of Particulars; discovery; production of

informant information; Jencks Act materials; notice of Government's intention to use anything

seized pursuant to a search warrant; impeachment information against Government witnesses;

Brady materials; witnesses' statements; preservation of rough notes (Docket No. 18).  He also

sought disclosure of the identify and circumstances of a certain confidential informant, "CS-7,"

in the search warrant application under which he furnished information for that application

(Docket No. 26); particularization of co-conspirators and their statements (id.); and to controvert

the search warrant (id.).  In support of these motions, defendant submitted his attorney's

supplemental affidavit (id.); his affidavits (Docket Nos. 28, 29); his attorney's affidavit, with

exhibit (Docket No. 32), outlining efforts to obtain information regarding border crossing records. In response, the Government submits its responding papers (Docket Nos. 21, 27).

An evidentiary hearing was held on February 7, 2011 (Docket No. 35 (transcript); see Docket Nos. 30, 31), and following that hearing, defendant moved for production of statements made by witnesses in that hearing, pursuant to Federal Rule of Criminal Procedure 26.2 (Docket No. 33).

These omnibus motions initially were deemed submitted on March 14, 2011, following post-hearing submissions by the parties (Docket Nos. 36 (Government), 37-38[1] (defendant)). Upon defendant's arraignment on the Superseding Indictment, on May 13, 2011 (Docket No. 40), supplementation of these omnibus motions was due by August 1, 2011, and the Government's response was due by August 3, 2011, and the motions were further argued on August 8, 2011 (Docket No. 41). This Court deemed these motions carried over to the Superseding Indictment.

Defendant then moved under the Superseding Indictment for discovery and other relief previously sought as well as unredacted search warrant information; statements from Jennifer Bannach and Jason McInerney; disclosure of global positioning system ("GPS") surveillance information; list of witnesses; law enforcement documents; and Grand Jury information (Docket No. 45). He sought hearings as to his eligibility for 18 U.S.C. § 3553(f) (for a sentence notwithstanding any statutory minimum); and regarding the probable cause for issuance of the search warrant. Defendant supports this motion with his attorney's affidavit with exhibit (a decision by Judge Nicholas Garaufis in Matter of Historical Cell-Site Information, 10MC897, E.D.N.Y., Aug. 23, 2011) (Docket No. 46). The Government responded (Docket No. 47). This

---

[1]Docket No. 38 correcting signature block for Memorandum, No. 37.

2

motion was argued on September 16, 2011, and the Court initially reserved decision (text minute entry, Sept. 16, 2011).

While this motion was pending, the United States Supreme Court considered <u>United States v. Jones</u>, 565 U.S. ___, 132 S.Ct. 945 (2012), which involved the constitutionality of warrantless use of a GPS devise on a vehicle and whether that use constitutes a search under the Fourth Amendment. The Court later held that the Government's attachment and use of a GPS device to a vehicle constitutes a search under the Fourth Amendment, <u>Jones</u>, <u>supra</u>, 565 U.S. ___, 132 S.Ct. 945 (<u>see</u> Docket No. 51 (defense attorney affirmation, Jan. 23, 2012, announcing <u>Jones</u> decision)).

Defense motions then turned to the use of a GPS devise on defendant's car. The Government was ordered to produce GPS discovery sought by defendant by March 8, 2012 (Docket No. 53; <u>see</u> Docket No. 52, minute entry). Defendant then filed his second motion to compel production of regarding the GPS device (Docket No. 54). The Government filed a responding affidavit from counsel, with attached affidavit from Joseph Stroh, a special agent with Homeland Security Investigations of the Department of Homeland Security, regarding the GPS device in this case (Docket No. 55).

During a status conference held on March 28, 2012, defendant sought more discovery surrounding the GPS device and the Government stated that it could respond; a further status conference was set for April 12, 2012 (text minute entry, Mar. 28, 2012; <u>see also</u> Docket No. 56, Order to Continue). On April 12, 2012, the Government sent a letter to defense counsel and the Court (Docket No. 59, Ex. C, letter of Assistant U.S. Attorney Mary Baumgarten to Alan Hoffman, Esq., Apr. 10, 2012) reporting that the computer hardware which ran the GPS tracking

software was no longer in the Government's inventory and the data was erased when the equipment no longer supported the software for that computer (id., with attachment; see also Docket No. 55, Gov't Atty. Aff., Ex. 1, Aff. of Joseph Stroh ("Stroh Aff.") ¶ 6). Later that day, the parties reported the status of production regarding the GPS device revealing that some documents were unavailable (text minute entry, Apr. 12, 2012). Defendant then made a third motion seeking discovery of the GPS tracker usage, as well as to dismiss the Indictment; production of Grand Jury minutes; production of the redacted search warrant application; and to vacate the search warrant (Docket No. 58). The Government responded to this motion (Docket No. 59), and argument of that motion (and other pending motions) was held on August 3, 2012 (text minute entry, Aug. 3, 2012; see Docket No. 60). Defendant then filed a supplemental Memorandum of Law for suppression of evidence arising from the GPS (Docket No. 61), to which the Government responded (Docket Nos. 62, 63). Further argument of these discovery motions was held on October 9, 2012 (text minute entry, Oct. 9, 2012; cf. text minute entry Sept. 25, 2012), and all motions then pending were deemed submitted as of October 9, 2012 (text minute entry, Oct. 9, 2012).

Separately, this Court will consider defendant's suppression motion, his motions to controvert the search warrant, and to dismiss the Superseding Indictment in a Report & Recommendation.

## BACKGROUND

Defendant initially was charged with attempted conspiracy to manufacture and import marijuana and importation of marijuana, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b)(2)(G), (b)(4), 963, and 18 U.S.C. § 2 (Docket No. 1, Indict.), between June 2004 and April 6,

2006. Defendant allegedly conspired to import 100 kilograms or more of marijuana from Canada (id.). The second count alleges that on April 6, 2006, defendant illegally imported marijuana from Canada into the United States (id.).

On April 28, 2011, the Government filed a Superseding Indictment (Docket No. 40), reiterating the two counts in the initial Indictment (id., Counts 1, 2) and charging defendant with conspiracy to possess with the intent to distribute and to distribute marijuana from around September 2008 to February 2010 (id., Count 3); possession with the intent to distribute marijuana on or about February 24, 2010 (id., Count 4); and maintenance of a drug-involved premises in Niagara Falls, New York, from around April 29, 2009, through February 24, 2010 (id., Count 5).

*Use of a GPS Device*

On December 5, 2007, law enforcement officers installed the GPS device on defendant's car, a Cadillac STS, while parked in a public parking lot in Niagara Falls, New York (Docket No. 55, Gov't Atty. Aff., Ex. 1, Stroh Aff. ¶ 2). Information from the GPS device was accessed remotely by law enforcement via a computer to assist in surveillance of the vehicle, for example, when the visual surveillance of that car was lost (id., Stroh Aff. ¶ 3). Defendant's Cadillac was under visual surveillance prior to the GPS device being installed (see id. ¶ 4).

The GPS device was removed between February 6 and 13, 2008, when a person advised law enforcement that they would be driving the Cadillac (id. ¶ 7).

The Government contends that no information generated by the GPS device was used to obtain the search warrant (Docket No. 59, Gov't Atty. Aff. ¶ 8 & n.2; cf. Docket No. 58, Def. Atty. Aff. ¶ 11).

Defendant seeks discovery surrounding the use of the GPS, relying upon a District of Massachusetts case, United States v. Rose, Criminal No. 11-10062-NMG, 2012 U.S. Dist. LEXIS 68095 (D. Mass. May 16, 2012) (Boal, Mag. J.) (Docket No 58, Def. Atty. Aff. ¶ 4, Ex. A).

The Government argued on October 9, 2012, that it does not intend to use information gleaned from the GPS at trial.

**DISCUSSION**

I.      GPS Discovery

The Supreme Court in Jones held that the Government's attachment of a GPS device on a vehicle and its use to monitor the vehicle's movements constitutes a search under the Fourth Amendment requiring a warrant, 565 U.S. ___, 132 S.Ct. 945.  Defendant in the case at bar seeks disclosure of the tracking information from the GPS devise implanted on his vehicle (Docket Nos. 45, 54, 59).  The Government disclaims any use of evidence obtained from the GPS device and argues that it was used to supplement visual surveillance of defendant's vehicle.

For this Order, the issue is whether the Government's production is sufficient and whether a hearing is necessary regarding the use of the GPS device.  The Government has disclosed notes of the surveillance (e.g., Docket No. 59, Gov't Atty. Aff. ¶ 2, Ex. A) and report that the computer equipment used with the GPS was no longer in the Government's inventory, data was erased, and the software run on that computer was no longer supported.  This destruction appears to be unrelated to this case.

The GPS was used to supplement surveillance of defendant's Cadillac when visual surveillance was lost.  But this surveillance occurred between December 5, 2007, to as late as

February 13, 2008.  The activities alleged in Counts 1 and 2 of the Superseding Indictment

occurred months before this surveillance (cf. Docket No. 40, Superseding Indictment), while the

offenses alleged in Counts 3, 4, and 5 occurred after the ending of the GPS surveillance (cf. id.).

Thus, whatever evidence from the GPS monitoring of defendant's Cadillac would not be relevant

to the charges pending before him.  Defendant points to the search warrant application referring

to defendant being under investigation since 2006, and the October 2007 to January 2008

surveillance, and the fact that the GPS surveillance was not mentioned (Docket No. 58, Def.

Atty. Aff. ¶¶ 10, 11 (citing search warrant application ¶¶ 4, 11)).  That search warrant

application, however, need not describe every means undertaken by the Government prior to

seeking the search warrant (differing from the requirements for a Title III wiretap, cf. 18 U.S.C.

§ 2518(1)(c)).  All the applying agent needed to present in his or her affidavit to show probable

cause was the "'veracity' and 'basis of knowledge' of persons supplying hearsay information"

and produce material to show that "there is a fair probability that contraband or evidence of a

crime will be found in a particular place," Illinois v. Gates, 462 U.S. 213, 238 (1983).  Despite

the extensive argument over this material and with the Government's representation that it would

not use any evidence obtained from the GPS monitoring, defendant's motion for further

discovery as to that evidence is **denied** as well as his motion for a hearing as to this GPS

monitoring and equipment or evidence retention.  This is consistent with the case cited by

defendant, United States v. Rose, supra, 2012 U.S. Dist. LEXIS 68095, at *7-17, where

Magistrate Judge Boal parsed the categories of discovery sought from the GPS investigative

materials in that case, denying as premature evidence surrounding any claimed good faith

exception by the Government and any exculpatory material contained with the GPS material, id. at *14-15, *16-17.

The Court next turns to the other discovery relief not related to the GPS.

II.    Bill of Particulars

Defendant seeks the particulars as to when and where the marijuana was allegedly imported, defendant's conduct that constitutes the elements of the offense, the amount of marijuana he allegedly agreed to smuggle into this country, and the names of his co-conspirators, among other facts insufficiently detailed in the Indictment (Docket No. 18, Def. Motion at 2-3; Docket No. 26, Def. Supp'al Motion at second-third unnumbered pages).

The Government argues that defendant has not met the legal threshold for particularization, namely showing need to enable preparation for a defense, avoidance of unfair surprise and double jeopardy (Docket No. 21, Gov't Response at 1, 6-9, 2). The Government lists the voluntary discovery given to defendant, including documentation of the drug importation activities and conspiracy (id. at 7). The Government contends that defendant is seeking specific dates and locations to reveal the Government's theory of this case, which is not required under the law for Bill of Particulars (id. at 7-8, 4-5). Next, the Government faults defendant for not arguing that he faces double jeopardy absent receiving a Bill of Particulars (id. at 8-9). The Government concludes that defendant's particularization requests seek to identify the confidential informants or conspirators (Docket No. 27, Gov't Response at 5), while denying that it has otherwise confirmed the identities of co-conspirators (id. at 5 n.2). The Government states that this is a continuing investigation and particularization now would jeopardize it (id. at 5-6).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990); see United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) (citing Won Tai v. United States, 273 U.S. 77, 82 (1927)) (see Docket No. 21, Gov't Response at 2). The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases. United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

Count I of the Indictment alleges that

"Between in or about June 2004, the exact date being unknown, and on or about April 6, 2006, in the Western District of New York, and elsewhere, the defendant, WALLY REYNOLDS, did knowingly, willfully and unlawfully combine, conspire and agree with others, known and unknown, to commit an offense against the United States, that is, to import into the United States from a place outside thereof, that is, Canada, 100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1) and 960(b)(2)(G); all in violation of Title 21, United States Code, Section 963."

(Docket No. 1, Indict.) Alone on its face, this Count does not particularize the charges against defendant or his role in the alleged conspiracy. But defendant has been furnished with what the Government terms "comprehensive voluntary discovery to defendant" (see Docket No. 21, Gov't Response at 9, 6-7). That Indictment has been superseded with additional charges (Docket No. 40), although Count 1 has not been amplified in the superseding pleading. Upon review of

the Superseding Indictment and the discovery furnished to date, the Court finds that defendant **is not entitled** to a Bill of Particulars inasmuch as the defendant is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

III.    Discovery

Aside from the discovery related to the GPS device discussed above, defendant seeks various items of pretrial discovery. He contends that there was no "open file" discovery provided to him, that the discovery provided "contained a paucity of information" (Docket No. 18, Def. Motion at 2). The Government counters that it produced comprehensive voluntary discovery and defense counsel has not requested anything further prior to filing this motion (Docket No. 21, Gov't Response at 9).

Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

A.    Statements of Co-Conspirators.

Defendant has requested production of all statements of any co-conspirator, whether charged or uncharged (Docket No. 18, Def. Motion at 13-14). This request is **denied**. It is well established that the statements of co-conspirators are not discoverable under Rule 16(a). In re United States, 834 F.2d 283, 286 (2d Cir. 1987); United States v. Percevault, 490 F.2d. 126 (2d

Cir. 1974); United States v. Green, 144 F.R.D. 631, 638 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The Jencks Act provides the exclusive procedure for discovering statements that Government

witnesses have given to law enforcement agencies (see Docket No. 21, Gov't Response at 13).

United States v. Covello, 410 F.2d 536, 543 (2d Cir.), cert. denied, 396 U.S. 879 (1969).

B.      Informant Information

Defendant next seeks the pre-trial disclosure of the identity of any informants in this case.

In particular, defendant seeks information about informant CS-7 named in the search warrant

application (Docket No. 18, Def. Motion at 17; Docket No. 45, Def. Atty. Aff. at page 4).   The

Government objects to identifying its confidential informants (Docket No. 21, Gov't Response at

23-26; Docket No. 27, Gov't Response at 2-4; see also Docket No. 47, Gov't Response at 1 n.1

(incorporating prior responses to respond to Docket No. 45)).   The Government is not required to

furnish the identities of informants unless it is essential to the defense.   Roviaro v. United States,

353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.), cert. denied, 489

U.S. 1089 (1988).   Nor does Rule 16 require the Government to disclose the names of witnesses

prior to trial.   United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921

(1990).   Moreover, the Government has stated that it believes that disclosure of the informant's

identification would subject the informant to personal danger from retribution by the defendant

and others and jeopardize an on-going investigation (Docket No. 21, Gov't Response at 23-26).

Defendant has not established that the pre-trial disclosure of the identities of any

informants is essential to his defense.   This request is **denied**.

C.      Identification Procedures

Defendant next seeks disclosure of any visual or audio identification procedures utilized in this case; specifying the procedure, the participants and the circumstances; any visual or audible representation of a person or voice used for identification purposes (Docket No. 18, Def. Motion at 14). The Government agrees to disclose information regarding pretrial identification (Docket No. 21, Gov't Response at 14). It does not expect to introduce pretrial identification evidence at trial (id.). This response **is sufficient**.

D.     Police Reports

Defendant next seeks production of non-federal police investigative reports (Docket No. 18, Def. Motion at 14-15; Docket No. 45, Def. Atty. Aff. at 16-17). The Government argues that defendant is seeking material exempt from production under Federal Rule of Criminal Procedure 16(a)(2) (Docket No. 21, Gov't Response at 15 & n.3, citing United States v. Kosherides, 877 F.2d 1129, 1133-34 (2d Cir. 1989)) and defendant is seeking third-party documents or items that are immaterial to this case (id. at 15). Any portion of the reports sought that are governed by the Jencks Act, the Government is willing to produce pursuant to the timing for Jencks Act production (id. at 15-16). This Court agrees with the Government and **deny** defendant's request for non-federal agency police reports.

E.     Statements from Jennifer Bannach and Jason McInerney

Defendant received in voluntary discovery redacted documents (Docket No. 18, Def. Memo. at 8). Defendant now seeks statements of these two persons regarding Counts 1 and 5 of the Superseding Indictment (Docket No. 45, Def. Atty. Aff. at 2-3, 3 n.1, 3 n.2, Addendum A, at 20-22; see Docket No. 18, Def. Memo. at 9-12 (Bannach's role); Docket No. 40, Superseding Indict.). Defendant represents that Bannach entered a plea agreement stating that on April 6,

12

2006, she imported marijuana from Canada, and defendant concludes that he needs her statement since Count 1 alleges that defendant conspired to import marijuana from Canada on that same date (Docket No. 40, Superseding Indict. Count 1). Defendant demands Bannach's written statement (id. at Addendum A at 21). As for McInerney, defendant contends that discovery materials reveal that on April 29, 2009, McInerney was outside of defendant's house and was believed to be there to pick up marijuana from another person, and McInerney's statements were part of the basis for executing a search warrant of defendant's house (Docket No. 45, Def. Atty. Aff. at 3 n.2). Defendant objects to the unilateral redactions by the Government of produced search warrant applications and discovery material, apparently to avoid disclosing informants and unindicted co-conspirators (id. at 3).

The Government generally opposes early disclosure of statements of uncharged co-defendants or co-conspirators as beyond the scope of Rule 16(a)(1)(A) (Docket No. 21, Gov't Response at 12) or disclosure of confidential informants (id. at 23-26). The Government then stated that it was unclear what defendant meant by a Freedom of Information Act request for information about border crossing of individuals that may be identified as co-conspirators (Docket No. 27, Gov't Response at 2 n.1). The Government produced redacted documents in voluntary discovery regarding "cooperating individuals for whom there is a safety and security concern" (Docket No. 21, Gov't Response at 9).

As with the informant information discussed above, defendant's request for unredacted documents that may disclose informant information is **denied**. As Jencks Act material, these documents will be treated as discussed below.

IV.    Jencks Act

Defendant seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C.

§ 3500 (Docket No. 18, Def. Motion at 21).   The Jencks Act governs the disclosure of

information and statements relating to the Government's witnesses.   Generally, according to the

Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u>

the witness has testified at trial.   In this case, the Government has agreed to disclose this

information at an unspecified time before trial (Docket No. 21, Gov't Response at 26),

presumably as directed by the District Court's Final Pretrial Order.   Therefore, Jencks Act

disclosure (including what unredacted disclosure of information regarding Bannach or

McInerney) **should occur pursuant to the pretrial Order schedule**; defendant **has not**

**established** that prior disclosure of Jencks material is essential to the preparation of a defense in

this case.

V.      Notice of Government's Use of Seized Evidence

Next, defendant seeks a declaration by the Government of the evidence it intends to use

that it obtained from the search conducted under the warrant, pursuant to Rule 12(d)(2),

defendant requests that the Government give notice of its intention to use at trial any evidence

which is discoverable under Rule 16.   Such notice, under the rules, avoids the necessity of a

defendant having to move to suppress evidence which the Government does not intend to use.

The Government here states that it intends to use all evidence in Immigration and Custom

Enforcement custody at trial against defendant (Docket No. 21, Gov't Response at 9).   Therefore,

defendant **is sufficiently on notice**.

VI.     <u>Brady</u>

Defendant next has requested that the Government disclose all materials potentially favorable to the defendant, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny (Docket No. 18, Def. Motion at 19, 21-23).  Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment.  Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness."  United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which he seeks to obtain.  The Government's response is that it believes that it has complied with its obligations to furnish exculpatory information (Docket No. 21, Gov't Response at 22).

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material.  Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided."  United States v. Percevault, 490 F.2d 126 (2d Cir. 1974); Green, supra, 144 F.R.D. 631.

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

VII.    Witnesses' Statements

Defendant seeks production of witnesses' statements (Docket No. 18, Def. Motion at 24). The Government agrees to provide witness statements (as part of its Jencks Act disclosure) but reserved the right to withhold certain statements to avoid witness retaliation or endangerment (Docket No. 21, Gov't Response at 27). With that caveat, the Government's response **suffices**.

VIII.   Preservation of Rough Notes

Defendant has also requested preservation of rough notes and other evidence taken by law enforcement agents involved (Docket No. 18, Def. Motion at 24). The Government has agreed to preserve all items of evidence (Docket No. 21, Gov't Response at 27). This **is also sufficient**.

IX.     Grand Jury Materials

Defendant seeks production of Grand Jury minutes and information to see if a different Grand Jury panel issued the Superseding Indictment from the one that issued the original Indictment (Docket Nos. 45, 58) generally as well as regarding the GPS device (as discussed above).

There is a tradition older than our nation that proceedings before a grand jury remain secret, Craig v. United States (In re Craig), 131 F.3d 99, 101 (2d Cir. 1997) (quoting In re Biaggi, 478 F.2d 489, 491 (2d Cir. 1973) (quoting in turn Pittsburgh Plate Glass Co. v. United States,

16

360 U.S. 395, 399 (1959))). "The rule of secrecy has been justified by the important ways in which it is said to contribute to the success of grand juries and to the protection of those who appear before them," id. at 101-02. Some of those purposes noted by the Second Circuit in Craig include insuring "the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors," "to encourage the free and untrammeled disclosures by persons who have information with respect to the commission of crimes," and "to protect [the] innocent accused who is exonerated from disclosure of the fact that he had been under investigation, . . . ," id. (quoting United States v. Proctor & Gamble Co., 356 U.S. 677, 681-82 n.6 (1958)).

While there is a long history of grand jury secrecy, id. at 103, it is not absolute, Biaggi, supra, 478 F.2d 489; Craig, supra, 131 F.3d at 103. Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize the disclosure of a Grand Jury matter at the request of the defense who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the Grand Jury. The Court may authorize this disclosure "at a time, in a manner, and subject to any other conditions that it directs," id. The decision to permit disclosure is within this Court's discretion after assessing "whether the need for disclosure overbalances the requirements of secrecy," United States v. Mahoney, 495 F. Supp. 1270, 1272 (E.D. Pa. 1980) (citing Pittsburgh Plate Glass, supra, 360 U.S. at 399).

The party seeking disclosure has the burden of showing the particularized need, Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979); Mahoney, supra, 495 F. Supp. 1273. Defendants had to show that they have a particularized need for disclosure that outweighs the Government's interest in maintaining Grand Jury secrecy, United States v. Alexander,

860 F.2d 508, 513 (2d Cir. 1988); see United States v. Twersky, No. S2 92 Cr. 1082, 1994 U.S.

Dist. LEXIS 8744, at *14-16 (S.D.N.Y. June 29, 1994) (granting in camera review of Grand Jury

minutes and reserving decision on motion to dismiss Indictment).  A defendant must state a

particularized need for these transcripts "in order to present a vigorous defense" which outweighs

the principle of Grand Jury secrecy, Pittsburgh Plate Glass, supra, 360 U.S. at 400.  There are

occasions "when the trial judge may in the exercise of his discretion order the minutes of a grand

jury witness produced for use on his cross-examination at trial.  Certainly 'disclosure is wholly

proper where the ends of justice require it,'" Pittsburgh Plate Glass, supra, 360 U.S. at 400

(quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940)).  The burden is

upon the defendant to show a particularized need exists that outweighs the policy of Grand Jury

secrecy, id.  Particularized need includes impeachment of witness at trial, refresh recollection,

and testing witness credibility, Proctor & Gamble, supra, 356 U.S. at 683.  "A review of grand

jury minutes is rarely permitted without specific factual allegations of government misconduct,"

Torres, supra, 901 F.2d at 233, and (even if disclosed) "as a general matter, a district court may

not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the

defendants," Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); Torres, supra,

901 F.2d at 233.

    As was held in the Pittsburgh Plate Glass case, supra, 360 U.S. at 400, defendant has not

made a showing of particularized need for production of the Grand Jury minutes (either entirely

or after in camera inspection), but cf. Dennis v. United States, 384 U.S. 855, 872-73 (1966)

(Court found that defense did not fail to make out a particularized need, listing the circumstances

of particularized need).  Merely stating the desire to make a vigorous defense in general, see also

18

United States v. Nunez, No. 00 CR 121, 2001 U.S. Dist. LEXIS 883, at *29-31 (S.D.N.Y. Feb. 1, 2001), or to determine whether different Grand Jury panels rendered the Superseding Indictment, cf. United States v. Hill, S No. 88 Cr. 154, 1989 U.S. Dist. LEXIS 2791, at *2 (S.D.N.Y. Mar. 20, 1989) (Superseding Indictment rendered by second Grand Jury after reviewing minutes of first Grand Jury), does not show a particular need for a given portion of the Grand Jury testimony or show whether that Grand Jury testimony is needed for impeachment, refreshing recollection or testing credibility.

As argued in another case, see United States v. Larson, No. 07CR304, 2012 U.S. Dist. LEXIS 133250 (W.D.N.Y. Sept. 18, 2012) (Scott, Mag. J.) , at *17-18 (Docket No. 317, Order at 11), there are two types of materials involving the Grand Jury. There are the minutes of proceedings that are subject to the particularized need analysis and the "records" of the Grand Jury, essentially the procedural or ministerial matters not related to testimony or any particular investigation. These latter items include how the Grand Jury is impaneled, how long they met investigating this case, the witnesses called, how testimony was presented to them (either by live witness, or by transcripts, or by summaries from earlier Grand Jury proceedings). The defense in Larson cited to cases in other circuits that recognize this distinction, primarily the courts in the Ninth Circuit, see United States v. Diaz, 236 F.R.D. 470, 475-76 (N.D. Cal. 2006). In Diaz, defendants requested to review grand jury records (such as how it was impaneled) and were granted access to Grand Jury instructions, juror selection procedures, the commencement and extension of any term, and the jury list of those that indicted them. The court, however, denied the request for grand jury attendance information, voting records of the Grand Jury, and the copies of any subpoenas that were requested as proceedings occurring before the Grand Jury, id.

at 480-81, 479-80.  "Disclosure of the exhibits presented to the grand jurors, persons who have seen the exhibits and a list of the materials disclosed is not solely procedural, and may reveal the essence of the grand jury proceedings," id. at 480, as with disclosing the names of persons receiving information about matters before the Grand Jury, id.

The Ninth Circuit has recognized public access to ministerial grand jury records, id. at 476; In re:  Special Grand Jury (for Anchorage, Alaska), 674 F.2d 778, 779 (9th Cir. 1982), "that do not reveal the substance or essence of the grand jury's investigation or deliberations," Diaz, supra, 236 F.R.D. at 476.  The Ninth Circuit in Special Grand Jury defined "ministerial" Grand Jury records as "those that 'generally relate to the procedural aspects of the impaneling and operation of the . . . Grand Jury, as opposed to records which relate to the substance of the . . . Grand Jury's investigation,'" Diaz, supra, 236 F.R.D. at 476, quoting Special Grand Jury, supra, 674 F.2d at 779 n.1.  The court there noted that the "ministerial" label "should not be taken to indicate any settled judgment on our part that none of the records could be classified as 'matters occurring before the grand jury' as that expression is used in Rule 6(e), Federal Rules of Criminal Procedure," id.

The Second Circuit, however, has not recognized such a disclosure rule for ministerial Grand Jury materials.  In Larson, this Court held that Grand Jury secrecy included these ministerial records and that they were beyond disclosure, 2012 U.S. Dist. LEXIS 133250, at *20, 21 (Order at 12, 13).  Here, defendant seeks to learn if two different panels considered issuing the Indictment and the Superseding Indictment.  That information is part of the matters before the Grand Jury (whichever panel it was) and must remain secret.  Defendant's motion to compel this disclosure is **denied**.

X.	Hearing for Eligibility under 18 U.S.C. § 3553(f)

Next, defendant seeks an evidentiary hearing as to his eligibility for a guidelines sentence notwithstanding the statutory minimum under 18 U.S.C. § 3553(f) (Docket No. 45, Def. Memo. at 3-4), termed by the Government to be the "safety valve" provision (Docket No. 47, Gov't Response at 2). As noted by the Government, this is a sentencing issue best left to the sentencing District Judge at the appropriate time (id. at 3-4); this motion is **deferred, if necessary, for determination by the District Court upon sentencing defendant**.

XI.	Government's Request for Reciprocal Discovery

In its initial and supplemental responses, the Government sought reciprocal discovery from defendant (Docket No. 21, Gov't Response at 31; Docket No. 27, Gov't Response at 22-23), without any apparent objection by the defendant. Under Rule 16, the Government is entitled to production of documents in a defendant's possession that the defendant intends to use in his case-in-chief. Defendant is reminded of his obligations under Rule 16 to produce pursuant to the Government's notice for discovery; therefore, the Government's motion (Docket No. 21, Gov't Response at 31; Docket No. 27, Gov't Response at 22-23) is **granted**.

## CONCLUSION

For the reasons stated above, defendant's omnibus discovery motion (Docket No. 18) as supplemented (Docket No. 26) and further motions (Docket No. 45) is **granted in part, denied in part** as discussed in detail above, or, with the hearing under 18 U.S.C. § 3553(f) is **deferred for consideration (if appropriate) by the District Court**. Defendant's motion for production of GPS information and hearing relative to GPS surveillance (Docket Nos. 45, 54, 58) are **denied** again as detailed above.

The Government's requests for reciprocal discovery (Docket No. 21, Gov't Response at 31; Docket No. 27, Gov't Response at 22-23) is **granted**.

So Ordered.

_/s/ Hugh B. Scott_
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
October 25, 2012